HUGH CAMMACK v. WILLIAM JOHNSON, jun. and others.

In equity the creditors of a partnership have a right to be first paid out of the partnership property, in preference to the creditors of the individual partners.

After the debts of a firm are satisfied, the residue of the property belongs to the individual partners, and can then, and then only, be applied to the payment of their individual creditors.

Whether an injunction ought to issue upon a bill for an account of the partnership, to restrain the sheriff, upon an execution at law against one of the partners, from selling the partnership property?—*Qu.*

As respects third persons, a different rule prevails in regard to silent partnerships from that which obtains in the case of open partnerships.

At law, the visible partner, if sued alone, cannot plead in abatement, that he has a dormant partner; and a creditor may at his election sue either the visible partner alone, or join any latent partner he may discover.

Those funds shall be liable (to the claim of a creditor) on which the credit is given. In an open partnership, the credit is given to the firm, and to the goods they are possessed of, and a partnership creditor shall be first paid out of them; but if the partner be unknown, the credit is given to the visible partner only, and the goods in his possession are supposed to be his own;

[Cammack v. Johnson et al.]

and in such case, the discovery of the latent partner cannot give any preference to a partnership creditor.

As between the partners themselves, there seems to be no reason to make any distinction in their rights, whether any are dormant or not; but as to the public, it is necessary to prevent injustice towards creditors that this difference should be observed.

The execution creditor (in the case of a silent partnership) has his remedy complete against all the effects of the visible partner, and against all the effects which belong to him and his dormant partner, as partners, and it makes no difference whether the debt was contracted by the debtor on the partnership account or on his individual account.

If the bill of complaint charges the existence of a partnership, without stating its character, an answer by the defendants that the partnership is dormant and unknown to them, is responsive to the bill, and need not be sustained by proof.

The power of dissolving injunctions, as well as of granting them, must necessarily rest much in the discretion of the court, and should be exercised in such way as to prevent the restraints by injunction from working unnecessary delay and injustice to parties.

This court will not sustain an exception to a judgment at law on the ground of irregularity.

Receivers, being officers of the court, are at all times entitled to, and must receive, its advice and protection.

THE complainant's bill, filed on the 24th of February, 1838, charges, that the complainant and William Johnson, jun., in May, 1833, entered into partnership in the business of manufacturing leather, in the city of Newark. By the terms of the partnership, they were to be equal partners and sharers in the profits of said business, and equally liable for all losses. The business was to be conducted in the name of William Johnson, jun. The partnership continued up till the time of filing the bill, and became liable for a large amount of debts contracted by the partnership, which are entitled to be first paid out of the partnership funds. That during the continuance of the partnership, the said William Johnson, junior, became largely indebted on his own individual account, arising out of transactions not connected with the business of said partnership. That the said Johnson, having wrongfully possessed himself of all the partnership

[Cammack v. Johnson et al.]

property, exercised entire control over it as if no partnership existed; and after having so become possessed of the partnership effects, he confessed three several judgments, which were entered up against him in the supreme court; one in favor of John E. Keen and Abraham Coates, for two thousand nine hundred and eighty-seven dollars; one to Robert C. Stoutenburgh, Elihu Day and Alvan Hedden, for two thousand five hundred and seventy-four dollars and forty-seven cents; and another to the said Robert C. Stoutenburgh, Elihu Day and Alvan Hedden, for one thousand four hundred and thirty-seven dollars and fifteen cents. That executions were immediately issued upon all the said judgments, and put into the sheriff's hands at the same time, with the understanding and direction to the sheriff that neither was to be considered as having the priority over the others, but that each was to be entitled to a rateable proportion of the proceeds of the sales. That the sheriff had advertised the stock of the said partnership, so being in the possession of the said William Johnson, junior, for sale on the 26th day of February, 1838, (being two days after the filing of the bill.) That from the fact of said Johnson having the entire charge of the books, the complainant was unable to tell what proportion of debts due from said firm were included in said judgments, and what proportion consisted of debts due from said Johnson individually and arising out of transactions unconnected with the business of the partnership— but the complainant believes, and therefore charges, that a large proportion of the amount of said judgments consists of debts and liabilities arising out of transactions of the said Johnson disconnected with the business of said partnership, and for which the said partnership is in no way liable. That after the levy under said executions, the said Johnson made sales of the partnership property so levied on, to the amount of nine hundred dollars, as deponent is informed and believes to be true.

The bill prays an account of the partnership dealings and transactions, and the appointment of a receiver to receive and collect the partnership debts and monies, to the end that the same may be applied to the payment of the partnership debts;

and that the books, accounts, vouchers and securities of the partnership may be placed in the hands of a master, so that the complainant may have access to them. It also prays an injunction against Johnson to restrain him from collecting or receiving any of the partnership debts, or from selling any of the partnership property ; and also an injunction restraining the plaintiffs in said executions, and also the sheriff of the county of Essex, to whom the same were directed and delivered, from proceeding to a sale of the partnership property so levied on as aforesaid, until the further order of the court. To this bill the usual affidavit was annexed.

On the filing of the bill, an injunction was issued as prayed for, and an order made, appointing receivers of the partnership property, and also appointing one of the masters of the court to receive and take charge of the books, accounts, vouchers and securities of the said partnership, the parties to have access to the same when necessary.

On the 5th of June, 1838, Robert C. Stoutenburgh, Elihu Day and Alvan Hedden, filed their answer to the bill of complaint; to which exceptions having been filed, the said defendants, on the 29th of August, 1838, filed a further answer. By their answer they state, that they lived in Newark—had repeatedly transacted business with William Johnson, junior, in his individual name : that having become indebted to them, he confessed judgments in their favor, as is charged in the bill of complaint; upon which judgments executions were issued and levies made upon the property in Johnson's possession. They deny all knowledge of the partnership, and state that they never heard of its existence until after the filing of complainant's bill.

William Johnson, junior, also filed his several answer to the bill. No answer was filed by John E. Keen and Abraham Coates, the other defendants.

The cause came on for hearing at January term, 1839, upon the application of Robert C. Stoutenburgh, Elihu Day and Alvan Hedden, to dissolve the injunction issued in the cause, and to vacate the order appointing receivers, so far as respects the said

[Cammack v. Johnson et al.]

Stoutenburgh, Day and Hedden. The motion to dissolve was heard upon the bill and answer.

*A. Whitehead* and *I. H. Williamson,* for defendants.

*O. S. Halsted* and *Elias Vanarsdale,* for complainant.

THE CHANCELLOR. This is a motion in behalf of the defendants, Stoutenburgh, Day and Co., to dissolve the injunction heretofore issued in this cause, and to vacate the order appointing receivers. The questions which arise on this motion are important in themselves, and must have, in any result to which I may come, a strong bearing on the rights of the parties; I feel it my duty, therefore, to state fully the grounds of my opinion.

The injunction was granted upon the case made by the bill alone. By that, the complainant and William Johnson, junior, were stated to be partners in the manufacture of leather, and to have been so from some time in May, 1833: that they were to share equally in the profits and losses of the business, and had incurred a large amount of debts, which were entitled to be first paid out of the partnership property. The bill further charged, that one of the partners, William Johnson, junior, had become largely indebted on his private account; had possessed himself wrongfully of the partnership effects, and in his own name confessed judgments for a large amount to certain persons, and among the rest to Stoutenburgh, Day and Co.; upon which executions were issued, and the property of the firm advertised by the sheriff for sale within two days from the time of presenting the bill; and that a large proportion of said judgments were for the individual debts of Johnson, and in no way connected with the said partnership.

Upon this outline of facts, verified by the complainant, the injunction was issued, and as I still think, properly. The case presented a strong claim for the interference of the court. The partnership was supposed to be one of an ordinary character; and the rule is well settled that in equity the creditors of a partner-

ship have a right to be paid first out of partnership property, in preference to those of the individual partners. The complainant also had a clear interest in insisting that the property of the firm should not go to discharge the debts of his copartner, until all the demands against the firm were satisfied. After the debts of a firm are satisfied, the residue of the property belongs to the individual partners, and can then, and then only, be applied to the payment of their individual creditors. This principle will be found fully recognized in the case of *Taylor* v. *Fields*, 4 *Ves.* 396; and in the case of *Deveau* v. *Fowler*, 2 *Paige*, 402. A question has indeed been made, whether an injunction ought to issue to stay an execution at law against one of the partners from selling the partnership property, for the reason, that such sale could only reach the interest of such partner, which must of course be in the residue, after discharging all the partnership debts: in other words, because the sale could only place the purchaser, as to the property, in the same situation that the defendant in the execution was prior to such sale. Chancellor Kent, in the case of *Moody* v. *A. and H. Payne*, 2 *Johns. Ch. Rep.* 548, refused to interfere in such case; but in 1 *Story's Equity*, 628, it will be seen, that learned author reviews this decision, and takes the opposite side of the question, insisting that it is a proper case for injunction. His reasoning is very strong, especially as applicable to personal property. He says, " It may be extremely difficult to follow the property into the hands of various vendees; and their lien may perhaps be displaced, or other equities arise by intermediate bona fide sales of the property by the vendees, or purchasers without notice; and the partners may have to sustain all the chances of any supervening insolvencies of the immediate vendees." For these reasons, to prevent multiplicity of suits and irreparable mischiefs, he is in favor of restraining the sale altogether. When such men differ, it is indeed difficult to decide; though I confess the reasoning of justice Story, as applied to the case of chattels, appears to me extremely forcible and just. In the very case now under consideration, to allow the sheriff to go on and sell every

[Cammack v. Johnson et al.]

hide of leather to different persons, would render it utterly impossible for the partnership creditors to get at their rights. But this question need not be decided here, as the defendants proceed on different grounds, and claim the right of selling this property freed from the partnership debts.

Stoutenburgh, Day and Co. have answered the bill, and by that answer they state, that although they reside and carry on business in the same place, and have had for many years past considerable business with William Johnson, junior, they never knew or heard of the said partnership until the complainant filed his bill in this cause. They state many matters, but those which are important are, that the said partnership was not public or known; that the complainant kept it a secret; and particularly, that the business was conducted in the individual name of *William Johnson, junior.*

This places the whole case in a new aspect; and it will be seen that, upon well settled principles of law, a very different rule obtains in silent from that in open partnerships : I mean as respects the public. If men carry on business without any concealment as partners, they are dealt with accordingly, and creditors understand to whom and upon what property they give their credit; but to allow a silent, unknown partner, the right of rising up at any time and embarrassing the claims of others, would work manifest injustice. There would be no safety in business if this might be done. After dealing with a man under the idea that he was carrying on business on his own account, and prosecuting demands to judgment and execution, if a secret partner may then, for the first, announce the fact of his being a member of the firm, and claim all the rights of an open partner, there would be no security in trade. At law the visible partner, if sued alone, cannot plead in abatement that he has a dormant partner; and a creditor may, at his election, sue either the visible partner alone, or join any latent partner he may discover. *Hodgkinson exparte,* 19 *Vesey,* 294 ; *Norfolk exparte,* 19 *Vesey,* 456 ; *De Mautort* v. *Saunders,* 20 *English Com. Law,* 410 ; *Hamper exparte,* 17 *Vesey,* 410 ; *Laylon ex*

[Cammack v. Johnson et al.]

*parte,* 6 *Vesey,* 438 ; *Mullet* v. *Hook,* 22 *English Com. Law,* 259.

The case of *Lord* v. *Baldwin,* cited on the argument from 6 *Pickering's Rep.* 348, reported in 7 *American Com. Law Rep.* 235, is a very strong case on this whole subject, and the reasoning of chief justice Parker is most satisfactory. The proceeding was in attachment, and therefore reached the property at once ; and the court, although they fully recognized the rule in open partnerships that the creditors of the firm must be first paid, denied any such rule in the case of dormant partners. The true principle is, in my opinion, laid down in that case ; that those funds shall be liable on which the credit is given. In an open firm, the credit is given to the firm and to the goods they are possessed of, and a partnership creditor shall be first paid out of them ; but if the partner be unknown, the credit is given to the visible partner only, and the goods in his possession are supposed to be his own, and in such case the discovery of such latent partner cannot give any preference to a partnership creditor. As between the partners themselves, I see no reason to make any distinction in their rights, whether any are dormant or not ; but as to the public, it is not only highly proper, but necessary to prevent injustice towards creditors, that this difference should be observed. The case of *French* v. *Chase,* in 6 *Greenleaf,* 166, is still stronger. It was there held, that the prior right of a partnership creditor to be paid out of the common property in preference to a separate creditor of either of the partners, does not exist in the case of a dormant partnership. Upon a careful examination of the cases on this subject, as well as from their reason and propriety, I am clearly of opinion that the execution creditor has his remedy complete against all the effects of the visible partner, and all the effects which belong to him and his dormant partner as partners, and that it makes no difference whether the debt was contracted by the debtor on partnership account or on his individual account.

The cases cited arose on disputes between creditors ; but in the case before me, the complainant, who asks the aid of the court,

is himself the dormant partner ; and surely, if creditors cannot claim the appropriation of partnership effects for payment of their demands first, there is less reason for doing so at the instance of the silent and unknown partner. The step is voluntary with him. He chose to place himself in this position, and it is far more just that he should suffer by it (however much that is to be regretted) than innocent traders who have been kept in the dark as to the true condition of things by his act. Upon the creditors of the firm, there is no other hardship than that which occurs continually when one creditor is preferred by his debtor over another. The law authorizes this preference if obtained by way of judgment, and it is practiced every day. Had there been no partnership, they must have been postponed in their demands by those judgments and executions; and there is no good reason why the discovery of a partner at this late day, should, in justice and equity, change the rights or remedies of any of the creditors.

But it is said by the counsel of the complainant, that the court cannot rely on the defendants' answer to make out this partnership as dormant and unknown to them ; that this is not matter responsive to the bill, but new, and must be proved. I am referred on this point to the case of *Rodgers and others* v. *Rodgers and others*, in 1 *Paige*, 426. There the fraud on which the equity rested was not stated to be in the knowledge of the defendants; they were representatives of the party charged with the fraud, and they answered only as to their knowledge and belief. In this case the matters stated in the answer are within the knowledge of the defendants. The answer may indeed be said to be a response to the bill. The existence of the partnership is charged in the bill, but of what character is not stated, nor even that any publicity was ever given to it. The answer meets this charge, by declaring that the first they ever heard of any partnership was by the bill, and by denying that they had themselves any knowledge of it whatever. There is a very important fact stated in the bill and repeated in the answer, that the business was conducted in the name of *William Johnson, junior*, one

of the partners. In one case, cited from 7 *American Com. Law Rep.* 234, it was held that every partner was to be considered as dormant, unless his name was mentioned in the firm or embraced under general terms as the name of one of the firm. Without going the length of that case, the fact that the business was conducted in the name of one of the partners, without even the addition of the word " company," is a strong corroboration of the facts stated in the answer, and was in an especial manner calculated to blind the eyes of the public.

This judgment was obtained in February, 1838, and the defendants' amended answer was filed in August last, since which time no depositions have been taken, nor any steps to bring the cause to a hearing. The power of dissolving injunctions, as well as that of granting them, must rest, necessarily, much in the discretion of the court, and should be exercised in such way as to prevent the restraints by injunction from working unnecessary delay and injustice to parties. Entertaining no doubt, from the whole case, of the truth of the answer in this important particular, and after carefully examining the charges made in the bill, and believing the law of the case to be with the defendants, I cannot think it right to continue this injunction until the accounts between these partners are settled. They have acquired a preference by their executions at law, which, after a full hearing, I believe them entitled to. The answer meets the equity of the bill. In addition, the answer of William Johnson, junior, has been read by both the parties on the argument, in which he states, that the partnership was designedly carried on in his name to prevent the public from knowing that the complainant had any interest in it; and that the connection was a matter entirely between themselves, and unknown, as he believes, to any of the dealers and creditors of the firm.

An exception was taken on the argument to the judgments of Stoutenburgh, Day and Co. They are not charged in the bill to be fraudulent, nor is there any thing in the case to show them to be so. How far they are liable to exceptions from irregularity, it is not the province of this court to decide. If any objection

[Cammack v. Johnson et al.]

is to be made to them on that account, the court in which they were entered is the proper tribunal in which to seek the redress.

The injunction must, therefore, be dissolved, so far as it stays proceedings on the two executions at law in favor of Stoutenburgh, Day and Co., with costs. The receivers will be directed to restore to the sheriff the property taken from him on which he had levied, upon being legally discharged and receipted for the same; and the sheriff will restore to the receivers any surplus in his hands, after satisfying those executions. As there will, in this case, remain other property in the hands of the receivers, and they will have further duties to perform, any additional order respecting them is unnecessary. Being the officers of the court, they are at all times entitled to, and must receive, its advice and protection.

Injunction dissolved.