The requests from lawyers and others, principally lawyers, for advisory opinions from the chancellor, vice-chancellors and masters in chancery, have become so numerous that something should be said to show their true character, and also to dissuade those who thus seek their law, and to justify the judges in refusing it.
It must be apparent to everybody that for a judge to give advice upon a cause which may possibly come into his court *Page 10 
in some form or other, is wrong in principle and practice. The giving of advice is the business of attorneys and counselors-at-law; the deciding of questions in court upon a set of pleadings or motion papers is the province of a judge. Before he decides a question both parties are entitled to be present and to be heard. To say that the proposition will not come before the judge is only begging the question. It is very likely to come before him in another case, but that is not the criterion. The giving of any advice is not a judicial duty, and is, consequently, a judicial impropriety. And for this there is abundant authority, as will hereinafter appear.
In 33 C.J. 1009 § 168, it is laid down that a judge should never commit himself upon any question, either of fact or law, which is liable to come before him, until the matter is properly presented to him. Of course, it goes on to say that he is not disqualified as a judge in certain cases, by reason of having expressed some opinion on the question involved in a case in his court.
The fact is, however, that no judge should give an advisory opinion. He cannot be expected to study the case if it is difficult, and any opinion which he may have expressed may embarrass him immensely when the matter comes before him officially, and counsel on both sides are heard and he is obliged to solemnly decide it.
In Inhabitants of Readington v. Dilley, 24 N.J. Law 209,213, the supreme court set aside the assessment for damages in the laying out of a public road, because two of the judges had formed and expressed an opinion upon the subject, with knowledge of the facts.
In Wilson v. Hinkley, Kirby (Conn.) (1787), 199, it is held (at p. 201): "A justice of the peace is bound by his oath not to be `of counsel in any quarrel that shall come before him;' and he ought to be cautious in declaring extrajudicial opinions, lest an undue use should be made of them."
In Crawford v. Ferguson (1911), 5 Okla. Cr. 377, it was held: "A judge should be careful not to commit himself upon questions of fact or law which may come before him for decision, *Page 11 
until the matter is properly presented in open court, and both parties have had ample opportunity to be heard."
In 47 L.N.S., in the report of the case Re Rochester
(1914), by the New York court of appeals, it is said (at p.156 note): "Upon principle it appears that one should be disqualified from acting as commissioner or juror to assess damages in eminent domain proceedings, or to determine the necessity of the improvement, if he has formed or expressed an opinion upon the point which, as an officer, he must decide; and the cases generally take this view of the matter." Equally, a judge should not form or express an opinion upon a point which, in his official capacity, he may be called upon to decide; and this, quite irrespective of any question of his absolute disqualification.
This practice of asking advisory opinions is not confined to lawyers, but even extends to masters in chancery. I had a letter from a special master recently, in which, after writing me at great length, he wound up by asking me to please advise him what he should do in the circumstances. I replied, informing him that special masters were appointed to advise the chancellor, and not for the chancellor to advise them; that he should decide the question involved and that he should advise me what order to make in the premises.
Sometime since, in an ex parte case to be considered by the court, there were placed before me written depositions taken under an order for proofs. I was astonished to find, among other things in the deposition, the following testimony from thesolicitor of complainant: "On this occasion I submitted to him [the chancellor] the proposition with which I was confronted, namely, whether the executors should sell the remaining assets and set up the trust funds for legal investments. * * * I mention this, not in the same light as a decree of the court of chancery, or that it should have the same efficacy, but solely to show that before taking this step there was a serious doubt in our mind what course to pursue." As to cases in which counsel may, and may not, testify, see Garrett v. Garrett, 86 N.J. Eq. 293. And this remarkable stipulation of counsel of both sides was incorporated in the testimony: "It is stipulated by counsel that *Page 12 
it is their conception of the law on the construction of this will that the will of decedent did not say what was to happen,"c.
I remember being consulted about this matter at one time and distinctly informed counsel on the occasion that I was not at liberty to give him any opinion; that the matter would have to come before me, and that I should keep an entirely open mind to pass upon the question; but did suggest that a bill might lie and advised counsel to look it up. He did file a bill, with the result shown. To say that I was astonished is to put it mildly. And think of counsel endeavoring to get a construction of a will to suit their fancy, stipulating the law which only the court can decide. And this was asked of a vice-chancellor, who refused it, stating the true rule. United States Trust Co. v. Speir,97 N.J. Eq. 150.
Recently I received a letter from a solicitor stating that in a certain case, naming it, he represented defendant, and was at loss to know what was the most advisable move to make on his behalf, and, therefore, took the liberty of writing directly to me knowing (?) that I would gladly render the desired assistance. And the letter wound up by respectfully asking me to advise what, in my opinion, should be done on behalf of the defendant. I replied, declining to advise the solicitor how to proceed, stating that at least one reason was that if, upon solemn argument, I was obliged to decide differently from my former, and, maybe ill-considered, opinion, I would be rather seriously perplexed, although this embarrassment would probably not extend to the solicitor who had procured the irregular opinion.
Not long ago a solicitor wrote me saying that he was interested in certain property, being the holder of a tax title, acquired prior to the filing of a certain bill; that, subsequently, the sheriff levied upon the premises in question. He then rather considerately says: "Would it be proper for me to ask you whether * * * is a necesary and proper party defendant in the foreclosure made by," c. I answered that it would be improper for me to give any opinion as to whether the certain person named was a necessary or proper *Page 13 
party defendant in the foreclosure suit, as it was an impropriety for a judge to give an advisory opinion; that if I were to give such an opinion as he asked, without those having adverse interest being present and heard, and if the question should afterwards come before me, or another judge of the court, it might well be that upon solemn argument a decision would have to be reached the reverse of the ex parte opinion given; and, whether so or not, I stood upon the impropriety of giving an advisory opinion, and so declined to answer the question.
Recently, at the bar of the court, I received a request for advice as to who should be parties to a certain suit; and in the mail, received from a lawyer a letter stating the facts of a certain other cause, winding up with the assertion: "I am puzzled as to what is the proper step for me to take * * * and I would therefore thank you to let me hear from you at your earliest convenience, so that I may advise accordingly." Here is a palpable request of me for an advisory opinion so that counsel may advise his client on the strength of what I might say. I sent the usual reply.
While writing this opinion I received a letter from a layman asking me to please advise him on what grounds he could get a divorce from his wife in New Jersey, stating certain acts on her part. He wound up by saying: "I would consult a lawyer, but someone has told me that I could get one, and others have told me, no." I, of course, wrote him that I could give him no opinion and he might consult a lawyer of his own selection and take his advice, if he chose.
Still another letter in the same mail is from a receiver in a certain cause stating a long congerie of facts, and concludes: "If your honor has any suggestion to make in the matter I shall be pleased to abide by the same." I declined to make any suggestion and relegated him to his counsel, saying he should be guided by his advice, or take his own.
Receivers, being officers of the court, are at all times entitled to, and may receive, its advice and protection.Cammack v. Johnson, 2 N.J. Eq. 163, 164. Mr. High, in his work, says that a receiver in the discharge of his duties should, on suitable occasions, apply to the court for instructions and *Page 14 
advice. Such applications may be made ex parte, although it is deemed the better practice to give notice to all parties in interest in an estate or fund, and a receiver acts at his peril where he assumes to determine as between different claimants without seeking the advice of the court. See Bull v. Int.Power Co., 86 N.J. Eq. 275 (at p. 277). I take it, that if the application be made ex parte it should be on a proper set of motion papers. I, personally, would direct the receiver to give notice to all persons concerned. In fact, I regard such to be his duty. Of course, there should be no application in trivial matters. Ibid. 277.
Another thing — a former judge of a district court has just told me that soon after his appointment to the bench a woman called upon him and asked him the status of a landlord and tenant situation, and that he foolishly advised her concerning it. Afterwards, he stated, he was astonished to find the very woman in court as a litigant in the very case she had mentioned, and after all the facts were developed and argued on both sides, he was obliged to decide against her; and she, in open court, stated that he had given her a contrary opinion. He said he felt extremely humiliated and never afterwards gave any sort of advisory opinion.
The foregoing are but a very few samples of innumerable questions that I get all the time, verbally and in writing; and from reports received from the vice-chancellors and masters of the court, I am of the opinion that this thing is going on continually. And I make no doubt but that the judges of the courts of law, from highest to lowest, are constantly asked about what practice attorneys should resort to in given cases before them.
I think I am betraying no confidence when I say that some years ago I heard a prominent justice of the supreme court discussing this very question in the presence of other judges, and he said: "No judge should ever give any sort of advisory opinion on any question." He was right.
What is allowable, and what is sometimes done in practice, when an intricate question of procedure presents itself, is to resort to an older attorney of experience, probably one who has considered the very question, and submit the doubts and *Page 15 
difficulties to him, and receive from him worthwhile advice. But anyone should be chary about doing anything of that kind unless he goes with gold in his right hand to retain special counsel, and, in some circumstances, perhaps, to ask some experienced counsel gratuitously to help him out of a dilemma.
The judges, however, should be let alone, for, I repeat, it is a legal impropriety for them at any time to give an advisory opinion, and for the reasons stated; and I am sure the bar will recognize the law to be that the judges have no such duty or right; and concur in these views.
Before leaving this subject I wish to say that I have consulted all of the vice-chancellors on this matter, and that each one of them concurs in the views above expressed. It is the opinion of the whole court.