241 N.J. Super. 543 (1990)
575 A.2d 537
PHILIP B. PLANK, PLAINTIFF,
v.
DEANNE WILSON PLANK, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
February 22, 1990.
*544 Jeffrey Lester for plaintiff (Braverman & Lester, attorneys).
H. Scott Hart for defendant.
HARRIS, J.S.C.

Preface.
Do not put me to 't,
For I am nothing if not critical.

Othello.

Introduction.
Everyone knows that the rules of court must be construed "to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." R. 1:1-2. Rules of procedure are, however,
Not simply a minuet scored for lawyers to prance through on pain of losing the dance contest should they trip. Those Rules have a purpose, one of which is to assist in the processing of the increasing number and complexity of cases.... *545 [Stone v. Old Bridge Tp., 111 N.J. 110, 125, 543 A.2d 431 (1988) (Clifford, J., dissenting)].
In this action, defendant seeks reconsideration of her application  made at trial  to allow the presentation of evidence which would permit her to resume her maiden name pursuant to N.J.S.A. 2A:34-21.[1] This rather ordinary and pedestrian request was denied by the court at the hearing on January 11, 1990 which ultimately resulted in the entry of an uncontested judgment of divorce. The court has carefully reviewed its prior determination in light of Rs. 1:1-2, 4:9-1, -2, 4:42-6, and 5:4-2(e). On pain of further criticism of the court's nit-picking, I conclude that the motion for reconsideration must be denied and the relief rejected anew, without prejudice. In the interest of justice, however, relief by an alternate mode shall be granted.[2]

Procedural Posture of the Action and the Factual Background.
As the first movement in this orchestrated divorce proceeding, plaintiff filed a complaint for divorce on November 28, 1989. Plaintiff sought dissolution of a 19-year marriage on the ground of desertion, N.J.S.A. 2A:34-2(b). The complaint alleges that on October 16, 1989, plaintiff and defendant executed a property settlement agreement which consensually resolved their disputes regarding support, maintenance, custody, equitable distribution, and the myriad other issues implicated in the marriage. The property settlement agreement did not address the issue of defendant's name change.
*546 An appearance, pursuant to R. 5:4-3(a), was filed by defendant on December 13, 1989:
... in order to be heard on the issues indicated below:
Custody of Children; Division of Property; Visitation; Counsel Fees; Alimony; Costs; Maintenance.[3]
On January 11, 1990, the action was scheduled for trial. The matter had been previously denominated as "settled." The purpose of the trial date was to enable the matter to proceed to disposition uncontested, with the October 16, 1989 property settlement agreement being incorporated into the judgment of divorce.
The hearing was conducted, at which time plaintiff proved his entitlement to a judgment of divorce under N.J.S.A. 2A:34-2(b). The property settlement agreement was, indeed, incorporated into the judgment of divorce.
At the hearing, for the first time, defendant  through her attorney  requested an "amendment" to enable her to present proofs so that the judgment of divorce might validate her right and desire to resume her maiden name.[4] The court denied the application to "amend" on the basis that there were no extant pleadings that could be amended to permit defendant to proceed on her embryonic affirmative claim for a name change. The court held that the appearance was limited in nature, and that because no answer and counterclaim had been filed seeking affirmative relief under N.J.S.A. 2A:34-21, an "amendment" was improper and inappropriate.
Immediately after receiving this bad news, defendant sought to bootstrap herself into a position to receive the name change by reliance upon plaintiff's prayer for relief in the complaint which stated:

*547 WHEREFORE, Plaintiff demands judgment of this Count [sic] as follows:
* * * * * * * *
F. For such other relief as the Court deems just and equitable.
Again, the court denied the application on the basis that plaintiff's pleading provided no standing for defendant's affirmative claim, and, furthermore, the catch-all prayer for relief was an inappropriate platform from which to launch a name change. The court expressed its opinion that if defendant wanted a name change at that late date, she could apply for this relief under R. 4:72 and N.J.S.A. 2A:52-1 et seq. When defendant's counsel suggested that such a route was cumbersome and expensive, the court chided counsel with a reminder that the simple filing of an answer and counterclaim requesting the relief would have saved his client an unnecessary effort.
Ultimately, a judgment of divorce was signed on January 11, 1990, in which the provision for defendant's name change (previously inserted by plaintiff's attorney's word processor) was excised by the court.
The within motion was filed on January 17, 1990 and seeks "reconsideration of the Court's denial of defendant's request to resume the use of her maiden name."[5] For the reasons which follow, the court concludes that its original instinct was correct, albeit for a reason not fully expressed at the time of the uncontested trial. Accordingly, defendant's motion for reconsideration is denied. Her motion, however, under R. 4:50 (see footnote 5) shall be granted.

*548 Conclusions of Law.

I. The Problem.
Nothing in the litigation process should happen by accident or afterthought. The modes of thought and discipline which lawyers are supposed to learn during their legal education must continue to be brought to bear after years of practice. Just as courts may not provide advisory opinions, In re Judges in Chancery, 101 N.J. Eq. 9, 137 A. 151 (Ch. 1927), they ought not fill a gap created by a party's representative in the litigation process.
The danger of permitting courts to act where the parties themselves seek no affirmative relief is to encourage a system which will be left to the whim of the power in charge.[6] Take away rules, and instead of courts of law, we will have only anarchy. If the court makes a new rule for each case, based upon expediency, or upon the judge's individual sense of what is right and what is wrong for that case and upon nothing else, we will have a society governed by caprice, instead of a society governed by law. No one would be happy, and none of us would be safe in such a society.
But, of course, courts do not exist for the lawyers; they do not exist for the judges. They exist for the litigants and litigants are entitled to the best possible procedure that human ingenuity can devise. Requesting an "amendment" on the day of trial to permit a name change can hardly be the best procedure devised. The business of the courts cannot be conducted at the public's expense on the haphazard basis that defendant desires. Indeed, both legislation and rules of court provide a route for the processing of claims and the resolution *549 of disputes, and that course, not the shortcut proposed by defendant, must be followed.
Defendant's results-first, rationale-to-follow form of argument is the antipathy of law. There are no rules, only afterthoughts. But, then, what is wrong with defendant's approach? Aren't results more important to litigants than processes? Isn't the insistence upon fidelity to the rules and notice pleading an arid exercise that ignores human pragmatism? Shouldn't "social justice" triumph over adherence to logical systems? The court's answer is simply that legal reasoning is an intellectual enterprise essential to the preservation of our system of justice. It fosters the notion that judges must decide issues on the basis of a body of rules, principles, and major premises independent of a judge's or litigant's personal preferences. To do otherwise is to imperil that delicate balance known as the separation of powers.
A name change may be accomplished by no formal action at all. At common law, an adult or emancipated person is free to adopt any name, as long as an illegitimate reason is not at its core. Nevertheless, the Legislature has created statutory paths by which a person may receive a judicially-validated and recordable name change. N.J.S.A. 2A:52-1 et seq. and N.J.S.A. 2A:34-21 are the separate, statutory devices which supplement the common law. Egner v. Egner, 133 N.J. Super. 403, 337 A.2d 46 (App.Div. 1975). The statutes must be read in pari materia. There are no reported cases which indicate exactly what that means in this context, and in light of the 1988 amendment to N.J.S.A. 2A:34-21, the problem of how that is to be accomplished has been complicated.
N.J.S.A. 2A:34-21 provides as follows:
The Court, upon or after granting a divorce from the bonds of matrimony to either spouse, may allow either spouse to resume any name used by the spouse before the marriage, or to assume any surname. [Emphasis supplied]
The recent amendment has vastly expanded the utility of the statute, to the point that the court wonders why persons *550 involved in a divorce are provided such free rein to adopt any surname, while others  not on the divorce track  are relegated to the expensive and cumbersome procedures under N.J.S.A. 2A:52-1 et seq. For example, in matrimonial actions, why did the Legislature not require notice to the local prosecutor, Attorney General (N.J.S.A. 2A:52-1), and State Police (N.J.S.A. 2A:52-2)? Since the adoption of any surname is now permitted under N.J.S.A. 2A:34-21, the disparity of required notices is almost irrational. Nevertheless, this case is not the proper occasion to question the wisdom of our democratically-elected representatives; the task at hand is to sensibly administer one of the two statutory procedures, with due respect, regard, and reference to the other. At the very least, substantial substance must be accorded to N.J.S.A. 2A:34-21.
The court concludes that a judicially-validated name change under either statute is a cause of action. It is not an inherent, free-floating entitlement that may be actualized by the invocation of magic words. To qualify for the relief available by either statute, a party must affirmatively seek such relief. The only way that relief may be obtained is by filing a pleading requesting such relief, or amending a pleading to request it. In the instant case, defendant stands before the court unadorned of any pleading.
A "pleading" is not simply every piece of paper filed in an action. R. 4:5-1 lists the permitted pleadings in a civil action:[7] complaint, answer[8], answer to a counterclaim or cross-claim, third-party complaint, third-party answer, and a reply. "No other pleading is allowed." Ibid.
Orders, petitions, motions (Cf. R. 1:4-5), and appearances are NOT pleadings, although by common jargon and shorthand *551 identification they have been subsumed within the rubric. A pleading is not called a pleading for nothing. It pleads for relief or pleads defenses. An appearance no more seeks affirmative relief than an acknowledgment of service. It pleads nothing. This is an obvious attribute, notwithstanding the 1986 amendment to R. 5:4-3(a) which expands the utility of an appearance in the Family Part to allow it to reserve a litigant's right to "be heard on issues." See Report of Supreme Court Committee on Family Practice, 116 N.J.L.J. 147, 150 (1985). This naturally begs the question as to which issues! Surely a party who files an appearance cannot be heard on an issue that is not before the court.[9] If that were true, then we might as well do away with written claims for relief and turn the court into the pit of a securities exchange where claims and defenses are offered and accepted on the basis of who yells the longest and loudest. Even the most liberal advocate of rule flexibility would likely agree that the controlled anarchy of a trading floor is inappropriate as a forum for the resolution of societal disputes. This court, for one, will not allow the floor of its courtroom to become a bargaining pit for attorneys-cum-traders.
If defendant desires a court-sanctioned name change, she was required to assert a claim therefor in a pleading, or request an amendment of an extant pleading under R. 4:9-1 and -2. Since no pleading exists on behalf of defendant, she remains unentitled to the relief requested in the context of this motion.

II. The Remedy.
Nevertheless, the court recognizes that defendant is not without a speedy remedy. N.J.S.A. 2A:34-21 permits a name change "Upon or after a divorce." Thus defendant need not *552 resort to the formidable procedure under N.J.S.A. 2A:52-1 et seq. and R. 4:72. All that is required is this motion seeking relief under R. 4:50 which seeks permission to file an answer and counterclaim to allege the requisite facts to establish her entitlement to a name change. Since that motion has made (by the court) and granted, a promptly-scheduled plenary hearing shall be conducted; if the proofs warrant the relief, the judgment of divorce shall be modified accordingly. Therefore, the motion for reconsideration is denied. Defendant's motion, however, for relief from the judgment of divorce is granted. An answer and counterclaim shall be filed on or before February 27, 1990. An answer to the counterclaim, if any, shall be filed on or before March 1, 1990. A hearing on defendant's counterclaim shall be conducted at 3:30 p.m. on Friday, March 2, 1990.
NOTES
[1] Defendant, an attorney, must ultimately comply with R. 1:29-2 and -3.
[2] The court does not consider this decision or its underlying philosophy to be anything other than conservative fidelity to the rules of court. It is not the product of a "local rule," abhored by the bench and bar alike, and most recently criticized in the Pathfinders' Committee Report, 125 N.J.L.J. 41, 46 (1990). Moreover, if this decision appears to some to be a "slavish adherence" to the rules of court, it is suggested, in the first instance, that such enslavement is an appropriate and cautious response to utilitarian litigation practice.
[3] Defendant's appearance merely filled in all the blanks in a form appearance printed by a legal publisher.
[4] Plaintiff consented to defendant's requested amendment.
[5] The motion was timely filed under R. 4:49-2 notwithstanding that at the time of the filing, defendant's attorney did not have in his possession a copy of the signed judgment of divorce. The more prudent practice would have been to await receipt of the judgment of divorce and to thereafter file a combined motion for reconsideration under R. 4:49-2 and for relief from the judgment under R. 4:50. Because of the novelty (to some) of this decision, the court shall, on its own motion (R. 1:1-2), treat this as an application under R. 4:50 for relief from the judgment to permit the filing of an answer and counterclaim in order to assert a claim under N.J.S.A. 2A:34-21.
[6] Such a system will also run the risk that if the court creates or advances an unpleaded issue or theory, it will contravene a tactic or strategy of the very party to whom the court believes it is providing relief. Said another way, if the court tries the case, it may very well lose it for the party.
[7] Rule 5:1-1 incorporates the rules in Part IV into the Family Part, insofar as applicable. R. 5:4-3(a) delimits, or expands (depending on one's perspective), the applicable pleadings in an action cognizable by the Family Part.
[8] Rule 4:7 permits a pleading to contain a counterclaim.
[9] Fanarjian v. Moskowitz 237 N.J. Super. 395, 568 A.2d 94 (App.Div. 1989) (approved for publication on January 17, 1990) is not to the contrary. There, the Appellate Division allowed an unpleaded issue to be decided. The difference between that case and this case is that there, R. 6:3-1 utterly precluded the filing of an Answer. Here, there was no such prohibition.